**DeConcini McDonald Yetwin & Lacy, P.C.**
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Phone: 602-282-0500
Fax: 602-282-0520
Direct line: 602-282-0472

**Lawrence D. Hirsch, #004982**
Attorney For Debtor

## UNITED STATES BANKRUPTCY COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: ) | In Proceedings Under Chapter 11 |
| ) | |
| CARL BRAUNAGEL, ) | Case No. 2-09-bk-22874-RTB |
| , ) | |
| ) | DEBTOR'S DISCLOSURE STATEMENT |
| Debtor ) | |

| | | |
|---|---|---|
| I. | Introduction | 2 |
| II. | Plan of Reorganization | 3 |
| | A. Classes of Claims | 3 |
| | B. Provisions Respecting the Unimpaired Classes of Claims | 17 |
| | C. Provisions Respecting the Impaired Classes of Claims | 19 |
| | D. Application of Absolute Priority Rule | 30 |
| | E. Liquidation Analysis | 31 |
| | F. History of Debtor | 33 |
| III. | Financial Information | 38 |
| IV. | Litigation | 38 |
| V. | Tax Consequences to Creditors | 38 |
| VI. | Tax Consequences to Debtor | 38 |
| VII. | Approval of Plan | 38 |

EXHIBITS:

    A. Plan of Reorganization

    B. 2006 - 2007 Tax Returns ( 2008 on extension and will be filed when completed)

    C. Real Estate Appraisals

    D. Income and Expense Projections

    E. Amortization Schedules for Real Estate Holdings

    F. Form of Ballot


## I. INTRODUCTION

Pursuant to 11 U.S.C. § 1125, Debtor and Debtor-In-Possession ("Debtor") in the above-captioned Chapter 11 case, Carl Braunagel, provide this Disclosure Statement to all of his known creditors, and other parties in interest. The purpose of this Disclosure Statement is to provide such information as may be deemed material important and necessary for the creditors of Debtor to be reasonably informed in regard to the Debtor's Plan of Reorganization dated September _10_ , 2009 ("The Plan"). The Plan, a copy of which accompanies this Disclosure Statement as Exhibit "A" and is made a part hereof, was filed in the United States Bankruptcy Court for the District of Arizona ("Bankruptcy Court") on , 2009. The portions of this Disclosure Statement describing the Debtor have not been subject to a certified audit, but rather have been prepared from information submitted by the Debtor from financial records maintained by the Debtor in the ordinary course of business. Every effort has been made to be as accurate as possible in the preparation of this Disclosure Statement.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO HIS FUTURE BUSINESS OPERATIONS OR THE VALUE OF HIS ASSETS) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE CERTIFICATION BY THE COURT AS TO THE ACCURACY OF ANY OF THE STATEMENTS

CONTAINED IN THIS DISCLOSURE STATEMENT. THOSE OBTAINING THIS DISCLOSURE STATEMENT SHOULD SEEK THEIR OWN INDEPENDENT COUNSEL IN ANALYZING THE CONTENTS OF THE DISCLOSURE STATEMENT.

## II. PLAN OF REORGANIZATION

Reference is made to the plan for details concerning the classification and treatment of holders of claims and interest. All terms defined in the Plan have the same meanings herein, unless otherwise noted.

A.    Classes of Claims and Interests

The Plan divides the creditors into 39 classes. The classes under the Plan are described below:

1.    Class 1:  Creditors Holding Administrative Claims

Debtor has employed DeConcini, MacDonald, Yetwin and Lacy ("DeConcini") as General Counsel for the Debtor-in-Possession. DeConcini received a retainer of $25,000.00 from the personal funds of Debtor. To the extent that unencumbered funds are available to pay administrative expenses, counsel shall be paid from the estate. Counsel shall be paid only after fees are approved by the Court after Notice and Hearing. Debtor has not incurred post-petition taxes. Debtor is not indebted to the Office of the United States Trustee for any post-petition quarterly fee obligations. To the extent that such fees are unpaid, they shall be paid no later than the effective date of the Order Confirming Debtor's Chapter 11 Plan of Reorganization. DeConcini has not filed its first Fee Application but will do so prior to the hearing on the confirmation of the Plan. To the extent that the retainer paid by Debtor is not adequate to cover all fees incurred by DeConcini, Debtor and DeConcini will make suitable arrangements for the payment of any unpaid fees due at the time of Confirmation of the Plan. Any and all Fees due for other outside professionals shall be paid in full by Debtor, either upon the effective date of confirmation of the Plan or pursuant to an agreement reached between the Debtor and the Claim holder or upon an Order approving the fees, if unencumbered funds are present.

3

Debtor shall remain current in required filings of monthly operating reports and post-Confirmation reports as well as payment of quarterly fees until the case is closed. Payment of allowed Administrative Expenses shall be made from the cash flow of Debtor's business and real estate operations and/or the liquidation of Debtor's assets.  Debtor shall promptly pay all fees due the Office of the United States Trustee.

        2.    <u>Class 2-37 Creditors Holding Secured Claims:</u>

        a.    <u>Class 2: Bank of America:</u>  Bank of America ("B of A") holds a first lien position on Debtor's investment property located at 5835 La Privada, Cottonwood, Az.  The amount due B of A is approximately 459,000 and the fair market value of the property is $435,000.  Debtor shall bifurcate the lien of B of A into secured and unsecured portions. Debtor shall pay the secured portion of the claim at 5% interest with payments amortized over 480 months with a balloon payment due of all remaining principal on the secured portion of the claim 96 months after the Plan Distribution Date.  Monthly payments on the secured portion of the claim will be $2,097.56.  The balance of the claim shall be treated as a general unsecured claim under Class 39 of the Plan.   B of A is impaired.

        b.    <u>Class 3-intentionally omitted</u>

        c.    <u>Class 4:  Bank of America:</u>  Bank of America ("B of A") holds a second lien Deed of Trust on the Debtor's investment property located at 570 Sawmill Gardens, Cottonwood, Az.. Debtor believes that B of A is totally unsecured.  The property is worth approximately $135,000 and is encumbered by a first lien in favor of Everhome in the amount of $153,000. Debtor shall file a complaint under 11 U.S.C. §506 to set aside the lien of B of A.  B of A shall be treated as a general unsecured claim under Class 39 of the plan.  B of A is impaired.

        d.    <u>Class 5: Bank of America:</u>  Bank of America ("B of A")has a first lien on Debtor's investment real estate located at Lot 80 Oak Creek Canyon, Az.  The property is worth approximately $296,000 and is encumbered by a lien in favor of B of A in an amount of approximately $351,000.   Debtor shall bifurcate B of A's claim into a secured and

4

unsecured portion. The secured portion of the claim shall be paid at an interest rate of 5%
annual interest with payments amortized over 480 months with a balloon payment of all
remaining principal due, on the secured portion of the claim, 96 months after the Plan
Distribution Date. The unsecured portion of the claim shall be treated as a General
Unsecured Claim under Class 39 of the Plan. Monthly payments on the secured portion of
the claim will be $1,427.30, commencing on the Plan Distribution Date. B of A is impaired
on this claim.

      e.   <u>Class 6: Chase Bank:</u> Chase Bank ("Chase") has a second lien on
Debtor's investment real estate located at 68 River Rd. Montague, NJ. The property is
worth approximately $457,000. Chase's lien is fully secured. Debtor intends to continue to
make regular monthly payments as specified in the Promissory Note. There are no arrears
due Chase and Chase is unimpaired on this claim.

      f.   <u>Class 7 Chase Bank:</u> Chase Bank ("Chase") holds a first lien on
Debtor's investment property located at 811 Assembly Court, Reunion, Fla.. Debtor
believes that the property is worth approximately $163,000 and the debt due Chase on this
claim is approximately $376,000. Debtor shall bifurcate the Chase claim on this property
into secured and unsecured portions. The secured portion of the claim shall be paid 5%
interest, amortized over 480 months with a balloon payment of all remaining principal on
the secured portion of the claim due on the 96th month after the Plan Distribution Date.
The remaining balance due Chase on this claim shall be treated as a general unsecured
claim under Class 39 of the Plan. Monthly payments on the secured portion of the claim
will be $785.98, with payments commencing on the Plan Distribution Date. Chase is
impaired on this claim.

      g.   <u>Class 8: Chase Bank:</u> Chase Bank (Chase) holds a second lien on
Debtor's investment property located at 811 Assembly Court, Reunion, Fla. Debtor believes
that the property is worth approximately $163,000 and the debt due Chase on this claim is
approximately $19,000. Debtor shall file a Complaint pursuant to 11 U.S.C. §506 to avoid

1  the lien held by Chase on this property. The entire balance due Chase shall be treated as a

2  general unsecured claim under Class 39 of the Plan. No payment shall be made to Chase on

3  account of its claim as a secured creditor for this lien. Chase is impaired on this claim.

5        h.      **Class 9: Chase Home Finance:** Chase Home Finance (CHF) holds a first

6  lien on Debtors' investment property located at 7651 Q 104 S. Whisper Way, Reunion, Fla.

7  The amount due CHF is approximately $540,000 and Debtor believes that the property is

8  worth $220,000. Debtor shall surrender the property to CHF, which may pursue any and

9  all rights available to it under Applicable State Law to foreclose on the property. To the

10  extent that applicable state law permits CHF to seek a deficiency claim, that claim shall be

11  treated as a general unsecured claim under Class 39 of the Plan. No payments shall be

12  made to CHF on account of its secured claim. CHF is impaired on this claim.

13        i.      **Class 10: CitiMortgage:** CitiMortgage (Citi) holds a first lien on

14  Debtor's residence located at 2625 S. Anica, Cottonwood, Az. Debtor believes that Citi is

15  fully secured and Debtor intends to continue to make regular monthly payments to Citi as

16  specified in the Promissory Note. There are no arrears due Citi and Citi is unimpaired on

17  this claim.

18        j.      **Class 11: Colson Empire State Bank:** Colson Empire State Bank

19  (Colson) holds a first lien on Debtor's investment property located at 10 Sussex St., Port

20  Jarvis, NJ. The property is worth approximately $375,000 and the debt due Colson is

21  approximately $72,000. Colson is fully secured and Debtor intends to maintain regular

22  monthly payments on the property as specified in the Promissory Note secured by the

23  Colson lien. There are no arrears due Colson on this claim and Colson is unimpaired on this

24  claim.

k.    <u>Class 12: Country Wide Home Loans:</u>    Country Wide Home Loans (Country Wide) holds a first lien on Debtor's investment property located at 637 Lake Beulah Cove, Winter Garden, Fla.    The amount due Country Wide is approximately $430,000 and the property is worth $375,000.  Debtor shall bifurcate the claim of Country Wide on this property into secured and unsecured portions.  The secured portion of the claim shall be paid interest at 5% with a 480 month amortization schedule with a balloon payment due 96 months after the Plan Distribution Date, at which time all remaining principal due on the secured portion of the claim shall be paid.  The unsecured portion of the claim shall be treated as a general unsecured claim in Class 39 of the Plan.  Monthly payments on the secured portion of the claim will be $1,808.24, with payments commencing on the Plan Distribution Date. Country Wide is impaired on this claim.

l.    <u>Class 13: Country Wide Home Loans:</u>    Country Wide Home Loans (Country Wide) holds a first lien on Debtor's investment property located at 14724 Peekskill Dr. Winter Garden, Fla.    The amount due Country Wide is $233,000 and the property is worth $156,000.  Debtor shall bifurcate Country Wide's claim into secured and unsecured portions.  The secured portion of the claim shall be paid interest at a rate of 5% with a 480 month amortization schedule with a balloon payment due of all remaining principal on the secured portion of the claim on the 96th months after the Plan Distribution Date.  The unsecured portion of the claim shall be treated as a general unsecured claim under Class 39 of the Plan.  Monthly payments on the secured portion of the claim will be $752.23, with payments commencing on the Plan Distribution Date.   Country Wide is impaired on this claim.

m.    <u>Class 14:  Country Wide Home Loans:</u>  Country Wide Home Loans

(Country Wide) holds a first lien of Debtor's investment property located at 1352 Center Court Ridge, Reunion, Fla. The amount due to Country Wide is approximately $384,000.00 and the fair market value of the property is $220,000.00. Debtor shall bifurcate the claim of Country Wide into secured and unsecured portions. The secured portion of the claim shall be paid at 5% interest, amortized over 480 months with all principal on the secured portion of the claim due 96 months after the Plan Distribution Date. Monthly payments on the secured portion of the claim will be $1,060.83. The balance of the claim shall be treated as a general unsecured claim under Class 39 of the Plan. Country Wide is impaired.

n. <u>Class 15: Country Wide Home Loan:</u> Country Wide Home Loan (Country Wide) holds a second lien on Debtor's investment property located at 1356 Center Court Ridge, Reunion, Fla. The amount due Country Wide is $96,000.00. The property is also encumbered by a first lien in favor of Saxon Mortgage in the amount of $326,000. Debtor believe that the fair market value of the property is $220,000.00. Debtor shall file a complaint pursuant to 11 U.S.C. §506 to set aside the lien of Country Wide. The claim of Country Wide shall be treated as a general unsecured claim under Class 39 of the Plan. Country Wide is impaired on this claim..

o. <u>Class 16: Everhome Mortgage:</u> Everhome Mortgage (Everhome) holds a first lien on Debtor's investment property located at 570 Sawmill Gardens, Cottonwood, Az. The debt due to Everhome is approximately $153,000.00 and the value of the property is $135,000.00. Debtor shall bifurcate Everhome's claim into secured and unsecured portions. The secured portion of the claim shall be paid at a rate of 5% interest with a 480 month amortization schedule with all remaining principal on the secured portion of the claim due 96 months after the Plan Distribution date. The remaining portion

1  of Everhome's claim shall be paid as a General Unsecured Claim under Class 39 of the Plan.

2  Monthly payments on the secured portion of the claim shall be $650.97 with payments

3  commencing on the Plan Distribution Date.   Everhome is impaired on its claim.

4          p.      Class 17: Federal Trust Bank:  Federal Trust Bank (Federal) holds a

5  first lien on Debtor' investment property located at 13485 Daniels Land, Winter Garden,

6  Fla.  The amount due to Federal is approximately $143,000.00 and the fair market value of

7  the property is $80,000.00.  Debtor shall surrender the property to Federal, which may

8  take any and all action authorized under applicable State Law to foreclose on its lien.  To

9  the extent that applicable State Law permits Federal to seek a deficiency claim, such claim

10  shall be treated as a general unsecured claim under Class 39 of the plan.  No payments shall

11  be made to Federal on account of its secured claim.  Federal is impaired on its claim.

12          q.      Class 18: Fifth Third Bank:  Fifth Third Bank (Fifth) holds a first lien

13  on Debtor's investment property located at Lot 22 Bella Collina, Monte Verde, Fla.  The

14  property is worth $50,000 and Fifth is owed approximately $500,000 on its claim.  Debtor

15  shall surrender the property to Fifth, which may pursue any and all remedies available to it

16  under applicable State law to foreclose on its lien.  To the extent that applicable State Law

17  permits a deficiency claim, such claim shall be treated as a general unsecured claim under

18  Class 39 of the Plan.  No payments shall be made to Fifth on account of its secured claim.

19  Fifth is impaired on its claim.

20          r.      Class 19: Fifth Third Bank:  Fifth Third Bank (Fifth) holds a first lien

21  on Debtor's investment property located at Lot 6 Bella Collina, Monte Verde, Fla.  The

22  property is worth approximately $15,000 and the amo0unt due Fifth is approximately

23  $630,000.  Debtor shall surrender the property to Fifth, which may pursue any and all

remedies available to it under applicable State Law to foreclose its' lien. To the extent that applicable State Law permits Fifth to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Fifth on account of its secured claim. Fifth is impaired on its claim.

s.    <u>Class 20: Fifth Third Bank</u>: Fifth Third Bank (Fifth) holds a first lien on Debtor's investment property located at 845 Assembly Court, Reunion, Fla. The debt due Fifth is approximately $245,800 and the property has a fair market value of $163,000. Debtor intends to keep this property and shall bifurcate the claim of Fifth into secured and unsecured portions. The secured portion of the claim shall be paid interest at a rate of 5% per annum and shall be paid based upon a 480 month amortization schedule with a payment of all remaining principal on the secured portion of the claim due on the 96th month after the Plan Distribution Date. The remaining balance due Fifth shall be treated as a general unsecured claim under Class 39 of the Plan. Monthly payments on the secured portion of the claim shall be $785.98, with payments commencing on the Plan Distribution Date. Fifth is impaired on its claim.

t.    <u>Class 21: Fifth Third Bank</u>: Fifth Third Bank (Fifth) holds a first lien position on Debtor's investment property located at 13339 Daniels Land, Winter Garden, Fla. The debt due Fifth is approximately $143,000 and the property has a fair market value of $80,000. Debtor shall surrender the property to Fifth, which may pursue any and all remedies available to it under applicable State Law to foreclose on its lien. To the extent that applicable State Law permits Fifth to pursue a deficiency claim, that claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Fifth on account of its secured claim. Fifth is impaired on its claim.

u.     <u>Class 22: Ford Motor Credit</u>: Ford Motor Credit (Ford) has a line on Debtor's 2006 Ford Expedition. The amount due Ford is approximately $22,000 and the fair market value of the vehicle is $18,000. Debtor shall bifurcate the claim into secured and unsecured portions. The secured portion of the claim shall be paid in 60 equal monthly payments of $339.68 , based upon 5% interest. The remaining portion of the claim shall be treated as a general unsecured claim under Class 39 of the Plan.

v.     <u>Class 23: GMAC Mortgage</u>: GMAC Mortgage (GMAC) holds a first lien on Debtor's investment property located at 7651 Q 102 S. Whisper Way, Reunion, Fla. The amount due GMAC is approximately $415,000 and the property has a fair market value of $220,000. Debtor shall surrender the property and GMAC may pursue any and all remedies available to it under applicable State Law to foreclose its' lien. To the extent that applicable State Law permits GMAC to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to GMAC on account of its secured claim. GMAC is impaired.

w.     <u>Class 24: Homecomings Financial</u>:    Homecomings Financial (Homecomings) holds a second lien on Debtor's investment property located at 7651 Q 102 S. Whisper Way, Reunion, Fla. The amount due Homecomings is $135,000, in addition to the $415,000 owed GMAC on the first mortgage. The property has a fair market value of $220,000. Debtor shall surrender the property and Homecomings may pursue any and all remedies available to it under applicable State Law to foreclose its' lien. To the extent that applicable State Law permits Homecomings to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Homecomings on account of its secured claim. Homecomings is impaired.

x.    Class 25: M & T Bank: M & T Bank holds a third lien on Debtor's investment property located at 10 Sussex Street, Port Jervis, NJ. M & T is also secured by assets owned by Debtor's business and the business makes the payment on the note. That business shall continue to make the payments. M & T is unimpaired.

y.    Class 26: National City Mortgage: National City Mortgage (National) holds a first lien on Debtor's investment property located at 1228 Castle Pines, Lot 131, Reunion, Fla. The amount due National is $337,000 and the property has a fair market value of $50,000. Debtor shall surrender the property and National may take any and all action authorized under applicable State Law to foreclose its lien. To the extent that applicable State Law permits National to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to National on account of its secured claim. National is impaired.

z.    Class 27: National City Mortgage: National City Mortgage (National) holds a first lien on Debtor's investment property located at 953 Desert Mountain, Lot 56, Reunion, Fla. The amount due National is $396,000 and the property has a fair market value of $50,000. Debtor shall surrender the property and National may pursue any and all remedies available to it under applicable State Law to foreclose its' lien. To the extent that applicable State Law permits National to seek a deficiency, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to National on account of its secured claim. National is impaired.

aa.    Class 28: Saxon Mortgage: Saxon Mortgage (Saxon) holds a first lien on Debtor's investment property located at 1356 Center Court Ridge, Reunion, Fla. The amount due Saxon is approximately $336,000 and the property has a fair market value of

$220,000. Debtor shall bifurcate the claim of Saxon into secured and unsecured portions. The secured portion of the claim shall be paid at a rate of 5% interest over 480 months with a balloon payment due of all remaining principal on the secured portion of the claim on month 96 after the Plan Distribution Date. Monthly payments on the secured portion of the claim will be $1,060.83. The balance of the unsecured claim shall be treated as a general unsecured claim under Class 39 of the Plan.. Saxon is impaired.

      bb.   <u>Class 29: Seacoast Bank:</u> Seacoast Bank (Seacoast) holds a first lien on Debtor's investment property located at 17123 E. Truscan Lane, Monte Verde, Fla. Seacoast is owed approximately $2,700,000 and the property has a fair market value of $1,760,000. Debtor shall surrender the property and Seacoast may take any and all remedies available to it under applicable State Law to foreclose its' lien. Seacoast also has a judgment against Debtor, which can only be collected from Debtor's sole and separate property. Debtor has little, if any, sole and separate property which would be available to satisfy the judgment claim of Seacoast. To the extent that applicable State Law authorizes Seacoast to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Seacoast on account of its secured claim. Seacoast is impaired.

      cc.   <u>Class 30: Suntrust Bank:</u> Sun Trust Bank (Sun Trust) holds a first lien on Debtor's investment property located at Lot 176 Bella Collina, Monte Verde, Fla. The amount due Sun Trust is $623,000 and the property has a fair market value of $10,000. Debtor shall surrender the property and Sun Trust may pursue any and all remedies available to it under applicable State Law to pursue a foreclosure of its lien. To the extent that applicable State Law permits Sun Trust to pursue a deficiency claim, such claim shall

be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Sun Trust on account of its secured claim. Sun Trust is impaired.

dd.   <u>Class 31: Sussex Bank:</u>  Sussex Bank (Sussex) holds a second lien on Debtor's investment property located at 10 Sussex Street, Port Jervis, NJ. Debtor believes that Sussex is fully secured and Debtor shall maintain regular payments on the Promissory Note. Sussex is unimpaired.

ee.   <u>Class 32: Wachovia Bank:</u>  Wachovia Bank (Wachovia) holds a first lien on Debtor's investment property located at Lot 432 Bella Collina, Monte Verde, Fla. The amount due Wachovia is $1,475,000 and the property has a fair market value of $10,000. Debtor shall surrender the property and Wachovia may pursue any and all remedies available to it under applicable State Law to foreclose its lien. To the extent that applicable State Law authorizes Wachovia to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Wachovia on account of its secured claim. Wachovia is impaired.

ff.   <u>Class 33: Washington Mutual Bank:</u>  Washington Mutual Bank (WaMu) holds a first lien on Debtor's investment property located at 68 River Road, Montague, NJ. Debtor believes that WaMu is fully secured and Debtor shall continue to make regular monthly payments as specified in the Promissory Note. There are no arrears due WaMu and WaMu is unimpaired.

gg.   <u>Class 34: Wells Fargo Bank:</u>  Wells Fargo Bank (Wells) holds a second lien on Debtor's investment property located at 845 Assembly Court, Reunion, Fla. The property is also encumbered by a senior lien in favor of Fifth Third Bank in the amount of $245,000. The property has a fair market value of $163,000. Debtor intends to retain the

property and shall file a Complaint under 1 U.S.C. §506 to set aside the lien of Wells. Wells shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Wells on account of its secured claim. Wells is impaired.

hh. <u>Class 35: Wells Fargo Bank</u>: Wells Fargo Bank (Wells) holds a second lien on Debtor's investment property located at 1352 Center Court Ridge, Reunion, Fla. Debtor believes that the property is worth less than what is owed to the senior lien holder, Country Wide Home Loan. Debtor shall file a complaint under 11 U.S.C. §506 to set aside the lien. Wells shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Wells on account of its secured claim. Wells is impaired.

ii: <u>Class 36: Wells Fargo Bank</u>: Wells Fargo Bank (Wells) holds a second lien on Debtor's investment property located at 13339 Daniels Land, Winter Garden, Fla. The amount due Wells is $73,000 and is junior to a lien in favor of Fifth Third Bank. Debtor intends to surrender the property and Wells may pursue any and all remedies available to it under applicable State Law to foreclose its lien. To the extent that applicable State Law permits Wells to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payment shall be made to Wells on account of its secured claim. Wells is impaired.

jj. <u>Class 37: Wells Fargo Bank</u>: Wells Fargo Bank (Wells) holds a second lien on Debtor's investment property located at 13485 Daniels Land, Winter Garden, Fla. The amount due Wells is $70,000 and is junior to a lien in favor of Federal Trust Bank. Debtor intends to surrender the property and Wells may pursue any and all remedies available to it under applicable State Law to foreclose its lien. To the extent that applicable State Law authorizes Wells to pursue a deficiency claim, such claim shall be treated as a

15

general unsecured claim under Class 39 of the Plan. No payments shall be made to Wells on account of its secured claim. Wells is impaired.

3. <u>Class 38:  Executory Contracts:</u>  Debtor shall assume all leases with his tenants.

4.. <u>Class 39: General Unsecured Creditors</u>

All other persons and entities that have extended credit, provided services or merchandise on an open account or have lent money to Debtor and all other parties whose claim are unsecured, including the unsecured portion of the claims of secured creditors Classes 3-18, and tax penalties due any taxing authority shall be considered holding General unsecured claims. Payment shall be made to General unsecured creditors after payment of Administrative and Priority Claims have been paid.  Unsecured claims shall be paid from the proceeds of Debtor's business and employment.  Arizona law provides that certain debts may not be satisfied from community property unless both members of the community have signed for the debt.  See ARS §25-214.  To the extent that claims of creditors may not be satisfied out of Debtor's community property, those claims may be satisfied only from Debtor's sole and separate property.  Debtor does not believe that he has any equity in sole and separate property.

Payments to General Unsecured Creditors shall commence after payment of Administrative Claims, payment to Ford Motor Credit and any arrears due to fully secured creditors. Unsecured Creditors shall be paid pro rata, without interest up to a total of $246,700 . Payment shall be made without interest on claims. Debtor believes that General Unsecured Claims shall be paid their pro rata share within ninety six (96) months of the Plan Distribution Date.

16

B.    <u>Provisions Respecting the Unimpaired Classes of Claims</u>

    1.    <u>Class 1: Administrative Expenses:</u> The holders of claims for unpaid Administrative Expenses incurred by the Debtor during the course of the Chapter 11 case (including the actual and necessary expenses for preserving the estate, such as unpaid attorney's fees) estimated in the aggregate to be approximately $25,000.00, will be paid in full commencing either the effective date of the Plan or upon the allowance of the claim by the Bankruptcy Court, whichever is later, or at such other time as is mutually agreeable to the claimant and the Debtor. Claims for post-petition taxes, if any, and unpaid Quarterly Fees due the office of the United States Trustee shall be paid immediately when due.

    2.    <u>Class 6: Chase Bank:</u> Chase Bank ("Chase") has a second lien on Debtor's investment real estate located at 68 River Rd. Montague, NJ. The property is worth approximately $457,000. Chase's lien is fully secured. Debtor intends to continue to make regular monthly payments as specified in the Promissory Note. There are no arrears due Chase and Chase is unimpaired on this claim.

    3.    <u>Class 10: CitiMortgage:</u> CitiMortgage (Citi) holds a first lien on Debtor's residence located at 2625 S. Anica, Cottonwood, Az. Debtor believes that Citi is fully secured and Debtor intends to continue to make regular monthly payments to Citi as specified in the Promissory Note. There are no arrears due Citi and Citi is unimpaired on this claim.

    4.    <u>Class 11: Colson Empire State Bank:</u> Colson Empire State Bank (Colson) holds a first lien on Debtor's investment property located at 10 Sussex St., Port Jarvis, NJ. The property is worth approximately $375,000 and the debt due Colson is approximately $72,000. Colson is fully secured and Debtor intends to maintain regular

1 monthly payments on the property as specified in the Promissory Note secured by the

2 Colson lien. There are no arrears due Colson on this claim and Colson is unimpaired on this

3 claim.

4        5.     Class 25: M & T Bank: M & T Bank holds a third lien on Debtor's

5 investment property locate4d at 10 Sussex Street, Port Jervis, NJ. M & T is also secured by

6 assets owned by Debtor's business and the business makes the payment on the note. That

7 business shall continue to make the payments. M & T is unimpaired.

8        6.     Class 31: Sussex Bank: Sussex Bank (Sussex) holds a second lien on

9 Debtor's investment property located at 10 Sussex Street, Port Jervis, NJ. Debtor believes

10 that Sussex is fully secured and Debtor shall maintain regular payments on the Promissory

11 Note. Sussex is unimpaired

12        7.     Class 33: Washington Mutual Bank: Washington Mutual Bank

13 (WaMu) holds a first lien on Debtor's investment property located at 68 River Road,

14 Montague, NJ. Debtor believes that WaMu is fully secured and Debtor shall continue to

15 make regular monthly payments as specified in the Promissory Note. There are no arrears

16 due WaMu and WaMu is unimpaired.

17        8.     Class 38: Executory Contracts: Debtor shall assume all leases with his

18 tenants.

19            Provisions Respecting the Impaired Classes of Claims

20        1.     Bank of America Class 2: Bank of America: Bank of America ("B of A")

21 holds a first lien position on Debtor's investment property located at 5835 La Privada,

22 Cottonwood, Az. The amount due B of A is approximately 459,000 and the fair market

23 value of the property is $435,000. Debtor shall bifurcate the lien of B of A into secured and

unsecured portions. Debtor shall pay the secured portion of the claim at 5% interest with payments amortized over 480 months with a balloon payment due of all remaining principal on the secured portion of the claim 96 months after the Plan Distribution Date. Monthly payments on the secured portion of the claim will be $2,097.56. The balance of the claim shall be treated as a general unsecured claim under Class 39 of the Plan. B of A is impaired

2.  Class 4: Bank of America: Bank of America ("B of A") holds a second lien Deed of Trust on the Debtor's investment property located at 570 Sawmill Gardens, Cottonwood, Az. Debtor believes that B of A is totally unsecured. The property is worth approximately $135,000 and is encumbered by a first lien in favor of Everhome in the amount of $153,000. Debtor shall file a complaint under 11 U.S.C. §506 to set aside the lien of B of A. B of A shall be treated as a general unsecured claim under Class 39 of the plan. B of A is impaired.

3.  Class 5: Bank of America: Bank of America (B of A) has a first lien on Debtor's investment real estate located at Lot 80 Oak Creek Canyon, Az. The property is worth approximately $296,000 and is encumbered by a lien in favor of B of A in an amount of approximately $351,000. Debtor shall bifurcate B of A's claim into a secured and unsecured portion. The secured portion of the claim shall be paid at an interest rate of 5% annual interest with payments amortized over 480 months with a balloon payment of all remaining principal due, on the secured portion of the claim, 96 months after the Plan Distribution Date. The unsecured portion of the claim shall be treated as a General Unsecured Claim under Class 39 of the Plan. Monthly payments on the secured portion of the claim will be $1,427.30, commencing on the Plan Distribution Date. B of A is impaired on this claim.

2.  Class 7: Chase Bank: Chase Bank ("Chase") holds a first lien on Debtor' investment property located at 811 Assembly Court, Reunion, Fla. Debtor believes that the property is worth approximately $163,000 and the debt due Chase on this claim is

19

approximately $376,000. Debtor shall bifurcate the Chase claim on this property into secured and unsecured portions. The secured portion of the claim shall be paid 5% interest, amortized over 480 months with a balloon payment of all remaining principal on the secured portion of the claim due on the 96th month after the Plan Distribution Date. The remaining balance due Chase on this claim shall be treated as a general unsecured claim under Class 39 of the Plan. Monthly payments on the secured portion of the claim will be $785.98, with payments commencing on the Plan Distribution Date. Chase is impaired on this claim.

3. <u>Class 8: Chase Bank:</u> Chase Bank (Chase) holds a second lien on Debtor's investment property located at 811 Assembly Court, Reunion, Fla. Debtor believes that the property is worth approximately $163,000 and the debt due Chase on this claim is approximately $19,000. Debtor shall file a Complaint pursuant to 11 U.S.C. §506 to avoid the lien held by Chase on this property. The entire balance due Chase shall be treated as a general unsecured claim under Class 39 of the Plan. No payment shall be made to Chase on account of its claim as a secured creditor for this lien. Chase is impaired on this claim.

4. <u>Class 9: Chase Home Finance:</u> Chase Home Finance (CHF) holds a first lien on Debtor's investment property located at 7651 Q 104 S. Whisper Way, Reunion, Fla. The amount due CHF is approximately $540,000 and Debtor believes that the property is worth $220,000. Debtor shall surrender the property to CHF, which may pursue any and all rights available to it under Applicable State Law to foreclose on the property. To the extent that applicable state law permits CHF to seek a deficiency claim, that claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to CHF on account of its secured claim. CHF is impaired on this claim

5. <u>Class 12: Country Wide Home Loans:</u> Country Wide Home Loans

(Country Wide) holds a first lien on Debtor's investment property located at 637 Lake Beulah Cove, Winter Garden, Fla. The amount due Country Wide is approximately $430,000 and the property is worth $375,000. Debtor shall bifurcate the claim of Country Wide on this property into secured and unsecured portions. The secured portion of the claim shall be paid interest at 5% with a 480 month amortization schedule with a balloon payment due 96 months after the Plan Distribution Date, at which time all remaining principal due on the secured portion of the claim shall be paid. The unsecured portion of the claim shall be treated as a general unsecured claim in Class 39 of the Plan. Monthly payments on the secured portion of the claim will be $1,808.24, with payments commencing on the Plan Distribution Date. Country Wide is impaired on this claim.

6. <u>Class 13: Country Wide Home Loans:</u> Country Wide Home Loans (Country Wide) holds a first lien on Debtor's investment property located at 14724 Peekskill Dr. Winter Garden, Fla. The amount due Country Wide is $233,000 and the property is worth $156,000. Debtor shall bifurcate Country Wide's claim into secured and unsecured portions. The secured portion of the claim shall be paid interest at a rate of 5% with a 480 month amortization schedule with a balloon payment due of all remaining principal on the secured portion of the claim on the 96th months after the Plan Distribution Date. The unsecured portion of the claim shall be treated as a general unsecured claim under Class 39 of the Plan. Monthly payments on the secured portion of the claim will be $752.23, with payments commencing on the Plan Distribution Date. Country Wide is impaired on this claim.

7. <u>Class 14: Country Wide Home Loans:</u> Country Wide Home Loans (Country Wide) holds a first lien of Debtor's investment property located at 1352 Center

Court Ridge, Reunion, Fla. The amount due to Country Wide is approximately $384,000.00 and the fair market value of the property is $220,000.00. Debtor shall bifurcate the claim of Country Wide into secured and unsecured portions. The secured portion of the claim shall be paid at 5% interest, amortized over 480 months with all principal on the secured portion of the claim due 96 months after the Plan Distribution Date. Monthly payments on the secured portion of the claim will be $1,060.83. The balance of the claim shall be treated as a general unsecured claim under Class 39 of the Plan. Country Wide is impaired.

8. <u>Class 15: Country Wide Home Loan:</u> Country Wide Home Loan (Country Wide) holds a second lien on Debtor's investment property located at 1356 Center Court Ridge, Reunion, Fla. The amount due Country Wide is $96,000.00. The property is also encumbered by a first lien in favor of Saxon Mortgage in the amount of $326,000. Debtor believes that the fair market value of the property is $220,000.00. Debtor shall file a complaint pursuant to 11 U.S.C. §506 to set aside the lien of Country Wide. The claim of Country Wide shall be treated as a general unsecured claim under Class 39 of the Plan. Country Wide is impaired on this claim..

9. <u>Class 16 Everhome Mortgage:</u> Everhome Mortgage (Everhome) holds a first lien on Debtor's investment property located at 570 Sawmill Gardens, Cottonwood, Az. The debt due to Everhome is approximately $153,000.00 and the value of the property is $135,000.00. Debtor shall bifurcate Everhome's claim into secured and unsecured portions. The secured portion of the claim shall be paid at a rate of 5% interest with a 480 month amortization schedule with all remaining principal on the secured portion of the claim due 96 months after the Plan Distribution date. The remaining portion

of Everhome's claim shall be paid as a General Unsecured Claim under Class 39 of the Plan. Monthly payments on the secured portion of the claim shall be $650.97 with payments commencing on the Plan Distribution Date. Everhome is impaired on its' claim.

10. <u>Class 17: Federal Trust Bank:</u> Federal Trust Bank (Federal) holds a first lien on Debtor's investment property located at 13485 Daniels Land, Winter Garden, Fla. The amount due to Federal is approximately $143,000.00 and the fair market value of the property is $80,000.00. Debtor shall surrender the property to Federal, which may take any and all action authorized under applicable State Law to foreclose on its lien. To the extent that applicable State Law permits Federal to seek a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the plan. No payments shall be made to Federal on account of its secured claim. Federal is impaired on its claim.

11. <u>Class 18: Fifth Third Bank:</u> Fifth Third Bank (Fifth) holds a first lien on Debtor's investment property located at Lot 22 Bella Colina, Monte Verde, Fla. The property is worth $50,000 and Fifth is owed approximately $500,000 on its claim. Debtor shall surrender the property to Fifth, which may pursue any and all remedies available to it under applicable State law to foreclose on its lien. To the extent that applicable State Law permits a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Fifth on account of its secured claim. Fifth is impaired on its claim.

12. <u>Class 19: Fifth Third Bank:</u> Fifth Third Bank (Fifth) holds a first lien on Debtor's investment property located at Lot 6 Bella Collina, Monte Verde, Fla. The property is worth approximately $15,000 and the amount due Fifth is approximately $630,000. Debtor shall surrender the property to Fifth, which may pursue any and all

1    remedies available to it under applicable State Law to foreclose its' lien. To the extent that

2    applicable State Law permits Fifth to pursue a deficiency claim, such claim shall be treated

3    as a general unsecured claim under Class 39 of the Plan. No payments shall be made to

4    Fifth on account of its secured claim. Fifth is impaired on its claim.

5        13.    Class 20: Fifth Third Bank: Fifth Third Bank (Fifth) holds a first lien

6    on Debtor's investment property located at 845 Assembly Court, Reunion, Fla. The debt

7    due Fifth is approximately $245,800 and the property has a fair market value of $163,000.

8    Debtor intends to keep this property and shall bifurcate the claim of Fifth into secured and

9    unsecured portions. The secured portion of the claim shall be paid interest at a rate of 5%

10   per annum and shall be paid based upon a 480 month amortization schedule with a

11   payment of all remaining principal on the secured portion of the claim due on the 96th

12   month after the Plan Distribution Date. The remaining balance due Fifth shall be treated as

13   a general unsecured claim under Class 39 of the Plan. Monthly payments on the secured

14   portion of the claim shall be $785.98, with payments commencing on the Plan Distribution

15   Date. Fifth is impaired on its claim.

16       14.    Class 21: Fifth Third Bank: Fifth Third Bank (Fifth) holds a first lien

17   position on Debtor's investment property located at 13339 Daniels Land, Winter Garden,

18   Fla. The debt due Fifth is approximately $143,000 and the property has a fair market value

19   of $80,000. Debtor shall surrender the property to Fifth, which may pursue any and all

20   remedies available to it under applicable State Law to foreclose on its lien. To the extent

21   that applicable State Law permits Fifth to pursue a deficiency claim, that claim shall be

22   treated as a general unsecured claim under Class 39 of the Plan. No payments shall be

23   made to Fifth on account of its secured claim. Fifth is impaired on its claim.

15. <u>Class 22: Ford Motor Credit:</u> Ford Motor Credit (Ford) has a line on Debtor's 2006 Ford Expedition. The amount due Ford is approximately $22,000 and the fair market value of the vehicle is $18,000. Debtor shall bifurcate the claim into secured and unsecured portions. The secured portion of the claim shall be paid in 60 equal monthly payments of $339.68 , based upon 5% interest. The remaining portion of the claim shall be treated as a general unsecured claim under Class 39 of the Plan.

16. <u>Class 23: GMAC Mortgage:</u> GMAC Mortgage (GMAC) holds a first lien on Debtor's investment property located at 7651 Q 102 S. Whisper Way, Reunion, Fla. The amount due GMAC is approximately $415,000 and the property has a fair market value of $220,000. Debtor shall surrender the property and GMAC may pursue any and all remedies available to it under applicable State Law to foreclose its' lien. To the extent that applicable State Law permits GMAC to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to GMAC on account of its secured claim. GMAC is impaired.

17. <u>Class 24: Homecomings Financial:</u> Homecomings Financial (Homecomings) holds a second lien on Debtor's investment property located at 7651 Q 102 S. Whisper Way, Reunion, Fla. The amount due Homecomings is $135,000, in addition to the $415,000 owed GMAC. The property has a fair market value of $220,000. Debtor shall surrender the property and Homecomings may pursue any and all remedies available to it under applicable State Law to foreclose its lien. To the extent that applicable State Law permits Homecomings to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Homecomings on account of its secured claim. Homecomings is impaired.

18. <u>Class 26: National City Mortgage:</u> National City Mortgage (National) holds a first lien on Debtor's investment property located at 1228 Castle Pines, Lot 131, Reunion, Fla. The amount due National is $337,000 and the property has a fair market value of $50,000. Debtor shall surrender the property and National may take any and all action authorized under applicable State Law to foreclose its lien. To the extent that applicable State Law permits National to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to National on account of its secured claim. National is impaired.

19. <u>Class 27: National City Mortgage:</u> National City Mortgage (National) holds a first lien on Debtor's investment property located at 953 Desert Mountain, Lot 56, Reunion, Fla. The amount due National is $396,000 and the property has a fair market value of $50,000. Debtor shall surrender the property and National may pursue any and all remedies available to it under applicable State Law to foreclose its' lien. To the extent that applicable State Law permits National to seek a deficiency, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to National on account of its secured claim. National is impaired.

20. <u>Class 28: Saxon Mortgage:</u> Saxon Mortgage (Saxon) holds a first lien on Debtor's investment property located at 1356 Center Court Ridge, Reunion, Fla. The amount due Saxon is approximately $336,000 and the property has a fair market value of $220,000. Debtor shall bifurcate the claim of Saxon into secured and unsecured portions. The secured portion of the claim shall be paid at a rate of 5% interest over 480 months with a balloon payment due of all remaining principal on the secured portion of the claim on month 96 after the Plan Distribution Date. Monthly payments on the secured portion of

the claim will be $1,060.83.  The balance of the unsecured claim shall be treated as a general unsecured claim under Class 39 of the Plan..  Saxon is impaired.

21.  <u>Class 29: Seacoast Bank:</u>  Seacoast Bank (Seacoast) holds a first lien on Debtor's investment property located at 17123 E. Truscan Lane, Monte Verde, Fla. Seacoast is owed approximately $2,700,000 and the property has a fair market value of $1,760,000.  Debtor shall surrender the property and Seacoast may take any and all remedies available to it under applicable State Law to foreclose its' lien.  Seacoast also has a judgment against Debtor, which can only be collected from Debtor's sole and separate property.  Debtor has little, if any, sole and separate property which would be available to satisfy the judgment claim of Seacoast.  To the extent that applicable State Law authorizes Seacoast to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan.  No payments shall be made to Seacoast on account of its secured claim.  Seacoast is impaired.

22.  <u>Class 30: Suntrust Bank:</u>  Sun Trust Bank (Sun Trust) holds a first lien on Debtor's investment property located at Lot 176 Bella Collina, Monte Verde, Fla.  The amount due Sun Trust is $623,000 and the property has a fair market value of $10,000. Debtor shall surrender the property and Sun Trust may pursue any and all remedies available to it under applicable State Law to pursue a foreclosure of its lien.  To the extent that applicable State Law permits Sun Trust to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan.  No payments shall be made to Sun Trust on account of its secured claim.  Sun Trust is impaired.

23.  <u>Class 32: Wachovia Bank:</u>  Wachovia Bank (Wachovia) holds a first

lien on Debtor's investment property located at Lot 432 Bella Collina, Monte Verde, Fla. The amount due Wachovia is $1,475,000 and the property has a fair market value of $10,000. Debtor shall surrender the property and Wachovia may pursue any and all remedies available to it under applicable State Law to foreclose its lien. To the extent that applicable State Law authorizes Wachovia to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Wachovia on account of its secured claim. Wachovia is impaired.

24. <u>Class 34: Wells Fargo Bank:</u> Wells Fargo Bank (Wells) holds a second lien on Debtor's investment property located at 845 Assembly Court, Reunion, Fla. The property is also encumbered by a senior lien in favor of Fifth Third Bank in the amount of $245,000. The property has a fair market value of $163,000. Debtor intends to retain the property and shall file a Complaint under 1 U.S.C. §506 to set aside the lien of Wells. Wells shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Wells on account of its secured claim. Wells is impaired.

25. <u>Class 35: Wells Fargo Bank:</u> Wells Fargo Bank (Wells) holds a second lien on Debtor's investment property located at 1352 Center Court Ridge, Reunion, Fla. Debtor believes that the property is worth less than what is owed to the senior lien holder, Country Wide Home Loan. Debtor shall file a complaint under 11 U.S.C. §506 to set aside the lien. Wells shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Wells on account of its secured claim. Wells is impaired. unsecured claim under Class 39 of the Plan.

26: <u>Class 36: Wells Fargo Bank:</u> Wells Fargo Bank (Wells) holds a second

lien on Debtor's investment property located at 13339 Daniels Land, Winter Garden, Fla. The amount due Wells is $73,000 and is junior to a lien in favor of Fifth Third Bank. Debtor intends to surrender the property and Wells may pursue any and all remedies available to it under applicable State Law to foreclose its lien. To the extent that applicable State Law permits Wells to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payment shall be made to Wells on account of its secured claim. Wells is impaired.

27. <u>Class 37: Wells Fargo Bank:</u> Wells Fargo Bank (Wells) holds a second lien on Debtor's investment property located at 13485 Daniels Land, Winter Garden, Fla. The amount due Wells is $70,000 and is junior to a lien in favor of Federal Trust Bank. Debtor intends to surrender the property and Wells may pursue any and all remedies available to it under applicable State Law to foreclose its lien. To the extent that applicable State Law authorizes Wells to pursue a deficiency claim, such claim shall be treated as a general unsecured claim under Class 39 of the Plan. No payments shall be made to Wells on account of its secured claim. Wells is impaired.

28. <u>Class 39: General Unsecured Claims:</u> All other persons and entities that have extended credit, provided services or merchandise on an open account or have lent money to Debtors and all other parties whose claim are unsecured, including the unsecured portion of the claims of secured creditors Classes 2-37, and tax penalties due any taxing authority shall be considered holding General unsecured claims. Payment shall be made to General unsecured creditors after payment of Administrative and Priority Claims have been paid. Unsecured claims shall be paid from the proceeds of Debtor's business and employment. Arizona law provides that certain debts may not be satisfied

1  from community property unless both members of the community have signed for the

2  debt. See ARS §25-214. To the extent that claims of creditors may not be satisfied out of

3  Debtor's community property, those claims may be satisfied only from Debtor's sole and

4  separate property. Debtor does not believe that he has any equity in sole and separate

5  property.

6       Payments to General Unsecured Creditors shall commence after payment of

7  Administrative Claims, payment to Ford Motor Credit and any arrears due to fully secured

8  creditors. Unsecured Creditors shall be paid pro rata, with interest at 5% up to a total of

9  $246,700.00. Payment shall be made without interest on claims. Debtor believes that

10  General Unsecured Claims shall be paid their pro rata share within one hundred twenty

11  (120) months of the Plan Distribution Date.

12       D.   <u>Application of the Absolute Priority Rule</u>

13       11 U.S.C. §1129 does not apply to individual debtors in Chapter 11, as it

14  relates to the Absolute Priority Rule, which would not allow confirmation of a plan over the

15  objection of unsecured creditors if the Debtor was to retain its equity. The Amendments to

16  the Bankruptcy Code in 2005 eliminated that provision as it relates to individual debtors in

17  Chapter 11, if the Debtor commit to a payment plan of disposable income for 60 months.

18  As defined by the Bankruptcy Code, Debtor has no disposable income, but will pay to their

19  unsecured creditors more than the value of the liquidation of their non-exempt property

20  over a 60 month period.

21       E.   <u>Liquidation Analysis</u>

22       Debtor owns real estate in Florida and Arizona, most of which is over-

23  encumbered. He has some equity in real estate and has no equity in motor vehicles. The

value of his non-exempt property is no more than $360,000. In a Chapter 11 case, the debtor must repay to his unsecured creditors an amount no less than what those creditors would have received in a Chapter 7 case. A Chapter 7 Trustee would collect non-exempt assets, liquidate them and ultimately make distribution to creditors. The trustee is entitled to a fee, as set forth in the Bankruptcy Code, for his or her services. That fee is paid prior to distribution to creditors. The trustee would also employ professionals, such as attorneys, accountants, real estate agents, auctioneers, etc., to assist the trustee in gathering and liquidating assets. Those professionals would also be paid prior to distribution to creditors. It is possible that the Chapter 7 estate would incur tax liability form the sale of real estate or other taxing events. Those expenses would be paid prior to distribution to creditors.

Debtor's non-exempt assets are as follows:

| 10 Sussex Street | fair market value: $375,000 | lien: $222,000 |
| Port Jervis, NJ. | Hypothetical costs: $30,000 | net: $125,000 |

| 871 North Ridge Lot 6 | fair market value: $117,000 | lien: 0 |
| Prescott, Az | Hypothetical Costs: $10,000 | net: $107,000 |

| 1547 Belle Meade #101 | fair market value: $87,000 | lien: 0 |
| Prescott, Az. | Hypothetical Costs: $7,000 | net: $80,000 |

| Personal Property: | $6,500-equity in car, bank account and firearms |
| | Hypothetical costs: $500    net $6,000 |

Total value to estate after costs of sale: $318,000

A Chapter 7 Trustee is compensated based upon a sliding scale, depending upon the moneys disbursed from the estate. If a Chapter 7 Trustee were to liquidate these assets, his or her fee would be based upon the gross value of the non-exempt property, prior to costs of sale. A Trustee fee for administering an estate of $360,000 would be approximately $21,300 (25% of the first $5,000, 10% between $5,000 and $50,000 and 5% above $50,000 of assets administered). A trustee would also employ an attorney and an accountant. It is possible that the estate would incur both income and capital gains taxes associated with the liquidation of the real estate holdings owned by Debtor. For purposes of determining the Debtor's liquidation value, Debtor assumes that the Chapter 7 estate would incur approximately $50,000 in attorney's fees, accounting fees and tax payments. This would also be paid prior to distribution to creditors.

Debtor believes that the net sum available to general unsecured creditors in a Chapter 7 case would be $246,700. Debtor will pay that amount with interest at a rate of 5% per annum over a period of time of no more than ten years. If at any time prior to the expiration of that period, Debtor is able to pay the amount due in full, payments will cease and the discharge will be immediately entered.

G. History of the Debtor

Debtor has been a successful pharmacist, businessman and entrepreneur for many years, specializing in pharmacy and home healthcare equipment and services since graduating from St. John's University in 1986. Up until 2004, profits and business expansion were going quite well. He had a successful pharmacy business and began to

32

endeavor into the real estate market as it seemed at the time to be a great way to invest one's profits.

His brother Tom Braunagel, (a realtor with Keller Williams) and his sister and partner in the pharmacy business, Marianne Waldron and Debtor decided to look into a series of partnerships whose purpose was to purchase and sell real estate holdings. Together they created several LLC's and financed these LLC's with investment capital. They began to purchase several properties in the form of vacant lots and condo's and used the equity the properties were rapidly gaining to secure lines of credit on several of the units to assist us in purchasing more. The banks seemed hungry for business and were actively soliciting them to secure newer mortgages, interest only programs and extensive home equity lines where they were lending many times at 90 percent loan to value. The market was expanding rapidly and the properties were gaining in value every quarter. The HELOC's they received enabled them to finance the expenses.

Most of the properties were purchased from a notorious developer Bobby Ginn out of Orlando, Florida. Ginn was a developer that was building 5 star golf and athletic resorts all over the east coast of the United States and was show casing the growth and expansion of his numerous resorts nationally and internationally. Properties were being bought in a numerous series of phases with each new release having sometimes a 100-500% increase in cost to purchase above the previous releases. Property values began to soar. It seemed the more realtors that contacted them about new developments and property releases, the more they supplied them with discount brokerage houses that were willing to give the partners mortgages to buy these properties and in many creative ways.

Some of the properties were purchased in the names of our partner formed LLC's

while others were put in one partner's name and others were put in some or all of their names. The banks would tell them who needed to be on the mortgage or who needed to guarantee it and the financing monies continued to flow. Then the market began to turn.

One of the properties Debtor owns is a vacant lot on a prestigious island resort named Bella Collina in Monte Verde, Florida, a resort that is now named in several class action lawsuits for violations of the ILSA statutes in Florida. When the market began to turn sour the investors tried to sell off some of their properties but to no avail. The sales and marketing companies for Ginn Resorts at Bella Collina would only infer that there was no interest in vacant lots and they wouldn't sell. The only way to sell would involve placing a home on the lot and upon completion of the construction; the properties could then be sold. Homes however had to be built according to their HOA guidelines, using their preferred builders only; and needed to be a minimum of $3MM in value with a square footage over 5000 square feet. After almost 1 year of deliberation and meetings with various builders and lenders, Land Barons, LLC, Debtor's sole proprietorship company was able to secure a mortgage in its name for $2.7MM to build a home on Bella Collina. Debtor had to personally guarantee the mortgage. The home was to be built by PGM builders and the project was to take 12-14 months. The lender even was creative enough to build in an interest reserve in the mortgage whereby the builder was paid installments that were in excess of the draws the builder needed. The surplus was sent to Debtor, who used the money to service the monthly interest charges charged by Seacoast Bank.

Needless to say, after 14 months the home wasn't even near completion. Yet, the bank continued to charge the interest payments for which Debtor was responsible. These averaged about $14,000 per month. Debtor had to use my personal residence to secure a

34

large $225,000 line of credit on his home so he could use the money to continue making interest payments while the home was being built.

After 14 months had lapsed, Seacoast bank gave Debtor a six (6) month extension and the builder was told the project had to be completed. Six months later the home still wasn't done. By now it was early 2008 and the markets were beginning to sag severely. They could not sell the home as is because it didn't have a CO and the builder was balking on getting the project done. Seacoast presented Debtor with yet another 6 month extension. By now he was nearly out of money from the line of credit and the home was still not done. Slowed business in real estate construction meant the builder was having a harder time getting the work completed. By June 2008, Debtor was out of money for this project.

Debtor contacted several representatives from Seacoast Bank and worked his way up to the executive officers for the bank to try and get some assistance in either restructuring the mortgage or helping Debtor defray the costs until the home could be built. He needed a CO to try to get it built so he could try to get a home equity loan on it or if unable then try to sell it for whatever it could be sold for. That necessity never came.

Meanwhile, all the other properties began to feel the economic crunch and rental incomes began to slow and the other partners were having financial difficulties in meeting their obligations to the LLC's. They began unloading what they could to stay afloat.

After several months of defaulting on mortgage payments to Seacoast Bank and after the bank refused to assist with the problems at hand with the builder and the project, Seacoast bank decided to take matters into their own hands. They filed action with the courts in Florida and received a summary judgment in late 2008 in the amount of

$2,700,000 and proceeded to file a judgment lien against all of Debtor's Florida properties. All the properties now had a large judgment lien on them. The other partners decided to stop contributing and the sole burden rested on Debtor. They stopped making payments on properties that weren't providing any rental income. The conditions only worsened.

Meanwhile the pharmacy business back east was also receiving bad news as the insurance carriers that owed it monies began to slow their payments to the pharmacies and lowering the reimbursement rates.. Each New Year of 2006, 2007 and 2008 gave smaller reimbursements for the pharmacy services. Reimbursements came in below our operational costs and sales slowed. There was a minimal profit in 2006, a loss of $100,000 in 2007 and a substantial loss of $449,000 in 2008. Debtor only maintains 20% of the shares of the pharmacy business so he does not believe the stock has any value. In fact based on results for the last two years Debtor has been advised it has no value other than to supply a working income for him and his family. The pharmacy business had to extend its full lines of credit for its operations and the banks stopped assisting with additional financing despite relationships with them for over a decade. Everything was beginning to collapse around Debtor.

It has now been almost a year since Seacoast won their summary judgment and sent our real estate holdings into a tailspin. Debtor's brother Tom has had to file Chapter 7. Debtor now has to file Chapter 11 and it is likely his sister Marianne will follow as well.

Debtor hired attorneys in New York and Florida and Arizona in trying to protect what little was left. He tried contacting realtors in an attempt to get short sales or debt forgiveness from banking lenders for over a year and still to no avail. The phones were ringing off the hook 24 hrs a day from collections companies and the lending institutions;

each one giving more false hope than the last, on programs they had to give debt relief.

Debtor's last ditch hope was to hire a negotiating law firm that cost the last of his available funds. They and a CPA Financial firm would look at the financials and create a true working spreadsheet of all the remaining assets Debtor had left and see if they could negotiate a deal with Seacoast Bank. When the dust had settled nothing had been resolved.

Seacoast bank then filed a foreign judgment in Arizona. It became clear that the only way Debtor could get out of this situation was to consider filing for a Chapter 11.

Since that time Debtor has labored over what is involved in gathering all the necessary paperwork; securing all financial documents; deeds; judgments and vital paperwork with hopes that a successful filing would allow him to keep some of the properties he worked so hard on to obtain. He would be able to restructure the remaining personal finances by working on formulas that would allow me to restructure the mortgages on the properties he wanted to keep thereby allowing him to make a small enough profit to keep those properties from going into foreclosure. Meanwhile, structuring a payment plan that would allow him to pay back what he is able. Debtor completed a credit counseling class that has opened his eyes to suggestions on how he can better survive current market conditions.

III. <u>FINANCIAL INFORMATION</u>

A number of financial records have been attached as Exhibits to this Disclosure Statement. Debtor have include copies of their 2006-2008 tax returns, pay off calculations on the secured portion of the mortgages and spread sheets showing income and expense projections for the rental properties and appraisals on the properties. All of these financial

1  records have been prepared by the Debtor based upon records maintained by the Debtor in

2  the ordinary course of their business.

### IV.  LITIGATION

4  No litigation has been filed against or by the Debtor since the filing of the Petition.

### V. TAX CONSEQUENCES TO CREDITORS

6  Debtor makes no representation as to the tax consequences of the payments, if any,

7  to be received in accordance with the Plan of Reorganization. Those concerned about the

8  tax consequences of the Plan of Reorganization should consult with their own tax advisors.

### VI. TAX CONSEQUENCES TO DEBTOR

10  There may be tax consequences to Debtor. It is impossible at this time to calculate or

11  estimate what those consequences may be.

### VII.  APPROVAL OF PLAN

13  In order to obtain confirmation of the Plan by the Bankruptcy Court, the Plan must

14  be accepted by:

15  A.  Each of the holders of the claims in Classes 2, 4, 5, 7-9, 7-9, 12-24,26-

16  30,32,34-37 and 39, OR

17  B.  Those claimants in Classes 2, 4, 5, 7-9, 7-9, 12-24, 26-30, 32, 34-37  and 39

18  who actually vote on the Plan, claimants holding at least two-thirds (2/3) in dollar amount

19  of the allowed claims in each class, who constitute more than one-half (½) in number of

20  such claimants in each class. Attached hereto as Exhibit "F" is a Form of Ballot which will be

21  circulated  to all creditors of Debtor. The Plan may be confirmed even if it is not accepted

22  by one or all of the impaired classes if the Court finds that the Plan does not discriminate

23  unfairly against and is fair and equitable as to such class or classes. This procedure is

commonly called "cram-down". A fairly simple description of "cram-down" as it applies to unsecured creditors is that Debtor cannot receive or retain property on account of its interests unless: (i) unsecured creditors are paid in full; (ii) unsecured creditors accept the Plan; or (iii) the Court determines that value given by Debtor under the Plan is equal to or greater than the property received or retained by it. The provision permitting "cram-down" is contained in 11 U.S.C. Section 1129(b). It is a complex provision, and this summary is not intended to be a complete statement of the law.

Respectfully submitted this 10 th day of September 2009,

DECONCINI MCDONALD YETWIN & LACY, P.C.

/s/ Lawrence D. Hirsch, #004982
Lawrence D. Hirsch
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Attorney for Debtor

Approved:

Carl Braunagel

A copy of the foregoing was mailed
this 28th day of April 2009, to:

Mailing Matrix

By: /s/ Linda Miernik
Legal Assistant to Lawrence D. Hirsch
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Phone: 602-282-0473
Fax: 602-282-0520